730 P.2d 1196

**STATE of New Mexico,
Plaintiff-Appellee,**

**v.**

**James Earl WILLIAMS, aka Clint
Williams, Defendant-Appellant.**

**No. 9099.**

Court of Appeals of New Mexico.

Nov. 26, 1986.

Paul G. Bardacke, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals from multiple convictions and sentences stemming from a residential burglary in Albuquerque. We address (1) defendant's two separate claims of double jeopardy; (2) claims of error as to jury instructions; and (3) a claim of judicial bias in sentencing. We affirm the convictions but vacate two of the sentences and remand for the entry of an amended judgment and sentence.

**FACTS**

The state's principal witness testified that she unknowingly entered the home of her father-in-law while it was being burglarized by defendant and an accomplice. She said defendant threatened her with a silver candelabra, then dragged her into one of the bedrooms where he bound her hands, removed her clothing, and began touching her breasts and genital area. Defendant was joined in this activity by his accomplice who did the same thing. She said defendant then tied her to the bed, and that he and the accomplice left the residence, taking her car with them. Defendant was convicted of aggravated burglary and aggravated assault, robbery, kidnaping, assault with intent to commit criminal

sexual penetration, four counts of criminal sexual contact, the unlawful taking of a vehicle, larceny over $2,500 and conspiracy to commit larceny. He was sentenced to consecutive terms of imprisonment for each conviction, resulting in a total term of imprisonment of thirty-seven and one-half years.

## I. DOUBLE JEOPARDY

Defendant raises two separate claims of double jeopardy, both involving the concept of merger. He argues, first, that the four counts of CSC must be merged into one count; and secondly, that his conviction for assault with intent to commit CSP must be merged into the conviction for kidnaping. Both claims involve the constitutional prohibition on multiple punishments for the same offense. The first claim requires a determination of whether the separate acts of sexual contact constituted separate or multiple criminal offenses. *See State v. Edwards,* 102 N.M. 413, 696 P.2d 1006 (Ct. App.), *cert. quashed,* 102 N.M. 412, 696 P.2d 1005 (1985). The second claim requires a determination of whether the greater offense of kidnaping necessarily involved the commission of the lesser crime of assault with intent to commit CSP. *See State v. Johnson,* 102 N.M. 110, 692 P.2d 35 (Ct.App.1984).

### A. CRIMINAL SEXUAL CONTACT COUNTS

The initial claim raises a question of first impression concerning the "allowable unit of prosecution" under the statutory offense of criminal sexual contact, NMSA 1978, Section 30–9–12 (Repl.Pamp.1984). *See State v. Edwards.* The state obtained four separate convictions on the theory that defendant committed one offense by touching the victim's breast, another by touching her genital area, both of which resulted in personal injury, and that he committed two additional offenses by touching the same areas, but was assisted the second time by his accomplice.

The proscription in Section 30–9–12 is as follows:

Criminal sexual contact is intentionally touching or applying force without consent to the unclothed intimate parts of another who has reached his eighteenth birthday * * * * For purposes of this section "intimate parts" means the primary genital area, groin, buttocks, anus or breast.

The statute makes the offense a misdemeanor when perpetrated through the use of force or coercion. It becomes a fourth degree felony under any of three aggravating circumstances: (1) the contact results in personal injury to the victim; (2) the perpetrator is aided or abetted by another; or (3) the perpetrator is armed with a deadly weapon. The state relied on the first aggravating factor for counts 6 and 7. It relied on the second aggravating factor for counts 8 and 9. Thus, two issues are presented: (1) whether Section 30–9–12 permits multiple counts based on multiple touchings, and (2) whether it permits multiple counts based on multiple aggravating factors.

▮▮▮ The committee that drafted the uniform jury instructions applicable to Section 30–9–12 considered the latter question and determined that the aggravating factors should *not* be used to classify separate offenses:

Throughout the statutes on sexual offenses * * * alternative methods are set forth for committing the offenses. For example, there are three ways in which a defendant can commit criminal sexual contact in the fourth degree. * * * Separate instructions have been prepared for each of these methods, and where force or coercion is an essential element of a particular method, separate instructions for each definition of force or coercion have been prepared. There are, therefore, ten separate instructions setting forth the essential elements of the single crime of criminal sexual contact in the fourth degree.

In all cases where alternate methods of committing one offense are submitted to the jury, the defendant is being

charged with only one offense and may be found guilty of only one offense. Committee commentary, NMSA 1978, UJI Crim. 9.03 (Repl.Pamp.1982). The committee's interpretation of the statute is persuasive. *See State v. Orona,* 97 N.M. 232, 638 P.2d 1077 (1982). We agree that the enumeration of different aggravating factors, or alternative methods of committing fourth degree CSC, does not evince a legislative intent to authorize multiple punishments for the same act. Thus, defendant's conviction on counts 8 and 9, based on defendant's contact with the victim's breast and genital areas while aided by an accomplice, are not sustainable as separate offenses.

The question remains, however, whether the separate touchings of the breast and genital areas constitute separate offenses. In arguing that the offenses should be merged, defendant claims that the touching of the two areas constituted one continuing offense. He points to the victim's own testimony that the incident lasted no more than five minutes and that there was no break in activity by the defendant. We disagree, however, that these facts are dispositive. Defendant's premise is akin to the "same transaction" test which our supreme court rejected in *State v. Tanton,* 88 N.M. 333, 540 P.2d 813 (1975). Our courts have instead held that whether a particular course of conduct involves one or more punishable offenses is largely a question of the legislative intent in proscribing the conduct. *See State v. Ellenberger,* 96 N.M. 287, 629 P.2d 1216 (1981); *State v. Edwards.* In ascertaining legislative intent, the courts must consider the statutory elements of the crime and whether the evidence offered in support of one offense would sustain a conviction of the other offense. *See State v. Ellenberger.*

In this case, the facts offered in support of count 6 were that defendant "manually manipulated" the victim's breasts. The facts offered in support of count 7 were that defendant "pulled" the victim's "pubic hair and area." New Mexico courts have previously held that different operative facts will sustain separate convictions for the same offense. *See State v. Johnson,* 103 N.M. 364, 707 P.2d 1174 (Ct.App.), *cert. quashed,* 103 N.M. 344, 707 P.2d 552 (1985) (six different potential victims permit multiple convictions for attempted murder); *State v. Smith,* 94 N.M. 379, 610 P.2d 1208 (1980) (trafficking of different types of narcotic drugs permits separate offenses); *State v. Cuevas,* 94 N.M. 792, 617 P.2d 1307 (1980) (involvement of different minors would permit multiple convictions for contributing to the delinquency of a minor).

We agree with the state that the legislatively-protected interest under the CSP and CSC statutes is the bodily integrity and personal safety of the individual. *See State v. Srader,* 103 N.M. 205, 704 P.2d 459 (Ct.App.), *cert. denied,* 103 N.M. 177, 704 P.2d 431 (1985). In defining "intimate parts," the CSC statute lists five separate protected areas: the genital area, groin, buttocks, anus and breast. We hold that the legislative intent was to protect the victim from intrusions to each enumerated part. Thus, under the facts of this case, which showed distinctly separate touchings of two of the protected areas, defendant was properly convicted and separately sentenced for counts 6 and 7. Our decision here is limited. Separate punishments are sustainable where evidence shows distinctly separate touchings to the different parts. However, where alternative methods of committing criminal sexual contact are submitted to the jury, the accused may be found guilty of only one offense.

## B. KIDNAPING AND ASSAULT

Defendant was convicted of kidnaping by holding for service. He claims that double jeopardy requires the merger of the kidnaping and the assault with intent to commit criminal sexual penetration convictions. Defendant concedes that the statutory elements for the two offenses are different. *Compare* NMSA 1978, §§ 30-4-1(A)(3) & -3-3 (Repl.Pamp.1984). However, he argues that the assault offense is an included offense of kidnaping under the facts of the

case. *See State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App.1985). We disagree.

In *Jacobs*, this court concluded that it was factually—and hence legally—impossible for the defendant to have committed the greater offense of aggravated burglary without necessarily committing the lesser offense of dangerous use of explosives. The same is not true here. The victim testified that defendant restrained her in the kitchen and dragged her into the bedroom, where he knocked her to the floor and tied her hands and feet. The victim at this point thought she was going to be raped. Defendant, however, continued to ransack the residence, demanding that the victim tell him where valuables were located. He then returned to the victim, turned her on her back, and began removing her clothes, saying, "I'm gonna get me some of this." After fondling the victim's breast and pubic area, defendant began removing his clothes, saying that he was going to force the victim to engage in fellatio, although he never actually did so.

■ Kidnaping involves the physical act of restraint or confinement, committed with the intent of holding the victim for services or some other purpose. *See* 2 Torcia, *Wharton's Criminal Law*, § 210 (13th ed. 1979). To "hold for services" is defined as *including* "sexual purposes," which can be either sexual penetration or contact. *See* Committee commentary, NMSA 1978, UJI 4.04 (Repl.Pamp.1982). By contrast, the crime of assault with intent to commit CSP is specifically defined only in terms of CSP. Here, there was evidence apart from the subsequent sexual assault from which the jury could infer that defendant restrained the victim with the intent of holding her for services. Under the facts, the assault with intent to commit CSP occurred *after* the victim had been restrained and held for services. *See State v. Singleton*, 102 N.M. 66; 691 P.2d 67 (Ct.App.1984). Because different evidence underlies the two offenses, merger is not required. *Id.*

## II. JURY INSTRUCTIONS

■ The jury was given the Uniform Jury Instruction for assault with intent to commit a violent felony, i.e., sexual penetration. NMSA 1978, UJI Crim. 3.11 (Repl.Pamp.1982). Defendant claims reversible error because the trial court drafted the instruction to specify the underlying felony as "criminal sexual penetration," rather than "rape," as the crime is referred to in the Use Note to UJI Crim. 3.11. Defendant contends that the substitution allowed the jury to return a guilty verdict based on defendant's intent to engage in either sexual intercourse or fellatio, while the Use Note would have restricted the jury to a finding of sexual intercourse only, as that term is used to define rape. *See* UJI Crim. 3.14. Defendant claims the error may be raised for the first time on appeal because it is fundamental error.

Defendant's arguments are frivolous. The statutory crime of rape was repealed in 1975. *See* 1975 N.M.Laws, ch. 109, § 8. However, it was not until 1977 that Section 30–3–3, which defines the crime of assault with intent to commit a violent felony, was amended to substitute "criminal sexual penetration" for "rape." The instructions at issue, UJI Crim. 3.11 and 3.14, were adopted prior to the 1977 amendment and, through apparent oversight, have not been modified to conform to the amendment. Thus, the committee commentary to UJI Crim. 3.14, on which defendant relies, is no longer applicable. *Cf. State v. Doe*, 100 N.M. 481, 672 P.2d 654 (1983).

Had the trial court used the term "rape," it would have instructed the jury on a nonexistent crime. Because the instruction correctly instructed the jury on the essential elements of the crime charged, there was no error. *See State v. Jennings*, 102 N.M. 89, 691 P.2d 882 (Ct.App.), *cert. quashed*, 102 N.M. 88, 691 P.2d 881 (1984).

Defendant also argues under point III of his brief-in-chief that the trial court committed reversible error when it modified the elements instruction for the crime of criminal sexual conduct. *See* NMSA 1978, UJI Crim. 9.04. In accord with our discus-

sion under point I(A), above, we conclude that Section 30–9–12 permits multiple punishments based on each separate unlawful touching of the bodily parts enunciated in the statute.

### III. FAILURE TO RECUSE

During the interim between trial and sentencing, the presiding trial judge, Judge Ross Sanchez, was the victim of an unrelated residential burglary. As in the case at bar, the burglary involved the offenses of kidnaping, robbery, aggravated burglary and auto theft. Following the burglary, defendant filed a motion to disqualify the judge, alleging that the judge's impartiality was reasonably questioned in light of the judge's own experience as a victim of the same crimes of which defendant had been convicted. Defendant also sought to have a separate hearing on the motion before another judge. Both motions were denied. The court then imposed the statutorily-prescribed sentences and directed that each sentence run consecutively.

The New Mexico Constitution prohibits a judge from presiding over a cause in which "he has an interest." N.M. Const. art. VI, § 18. *See* NMSA 1978, Code of Judicial Conduct, Canon 4 (Repl.Pamp.1985). This language has been construed to encompass an "actual bias or prejudice" but not "some indirect, remote, speculative, theoretical or possible interest." *State ex rel. Anaya v. Scarborough*, 75 N.M. 702, 705, 410 P.2d 732, 734 (1966). *See also United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 629 P.2d 231 (1980).

Defendant asserts that "[n]otwithstanding the judge's personal belief in his impartiality, the appearance of bias or prejudice in this case was real." He would have this court infer actual bias or prejudice from Judge Sanchez' refusal to merge any of the convictions and from the imposition of consecutive sentences for each conviction. However, it is firmly established that allegations of judicial bias cannot be predicated upon unfavorable rulings, *State v. Case*, 100 N.M. 714, 676 P.2d 241 (1984), nor from

the imposition of maximum allowable prison sentences. *State v. Augustus*, 97 N.M. 100, 637 P.2d 50 (Ct.App.), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981). In addition, while our decision here requires that counts 8 and 9 be merged for sentencing, the decision is one of first impression under Section 30–9–12. Thus, no judicial bias can be inferred from a contrary ruling on the issue below.

The record shows that Judge Sanchez imposed sentence based on defendant's extensive criminal record, the violent nature of the crimes committed, defendant's apparent imperviousness to rehabilitation and probation, and his acknowledged drug abuse. Because there is record support for the sentences imposed, defendant's allegations of judicial bias fails to rise above the level of "indirect, remote, [and] speculative." *Scarborough*.

### IV. SENTENCING

Defendant's brief raised an issue concerning the propriety of his eighteen-month sentence for unlawfully taking a motor vehicle, contrary to NMSA 1978, Section 66–3–504 (Repl.Pamp.1984). The state, however, pointed out that defendant's argument mistakenly relied on the pre-amended version of NMSA 1978, Section 66–8–9 (Cum.Supp.1986). Defendant's reply brief concedes the mistaken premise of his argument. He also acknowledges that his sentence was proper under the current versions of Section 66–8–9, and NMSA 1978, Section 31–18–15 (Repl.Pamp.1981).

The sentences for counts 8 and 9 are reversed. The convictions and sentences for counts 1 through 7, and 10 through 12 are affirmed. The cause is remanded for the entry of an amended sentence in conformity with this opinion.

IT IS SO ORDERED.

DONNELLY and FRUMAN, JJ., concur.