This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40176

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ELEXUS JOLAINE GROVES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant Elexus Jolaine Groves appeals her convictions for seven offenses arising from the death of two persons and the serious injury of a third in an automobile collision, which occurred as Defendant fled law enforcement officers who had signaled her to stop. Defendant continued to flee after the collision, without assisting the victims. On appeal, Defendant raises nine issues (two of which we consider together): (1) whether there was a striking violation of Defendant's speedy trial right justifying review

for fundamental error; (2) whether the district court properly instructed the jury on the elements of aggravated fleeing and whether there was sufficient evidence to support Defendant's conviction for aggravated fleeing; (3) whether the district court abused its discretion in denying Defendant's motion to exclude a witness; (4) whether the district court abused its discretion in denying Defendant's motion for a change of venue based on pretrial publicity; (5) whether the district court judge was biased against Defendant; (6) whether the district court erred in denying Defendant's motion to suppress a statement that she made to police on the date of her arrest; (7) whether the district court erred in imposing six-year sentences for Defendant's convictions for reckless vehicular homicide and knowingly leaving the scene of an accident resulting in great bodily harm or death; and (8) whether the district court abused its discretion in designating Defendant's convictions for reckless vehicular homicide and great bodily injury by vehicle as serious violent offenses for purposes of the Earned Meritorious Deductions Act (EMDA). For the foregoing reasons, we affirm.

## BACKGROUND

**{2}**     On January 18, 2017, Defendant and another individual, Paul Garcia ("Mr. Garcia"), ingested methamphetamine and then stole a van. The van was reported stolen and law enforcement officers located the van in traffic on a city street. Defendant was driving and Mr. Garcia was sitting in the passenger seat. Officers followed Defendant and engaged their emergency lights, signaling Defendant to stop. Defendant ignored the officers' signals and continued driving with officers in pursuit. As the pursuit continued, Defendant increased the speed of the van. The officers, pursuant to law enforcement policy, eventually disengaged their emergency lights and stopped pursuing Defendant. Defendant continued at a high rate of speed, running a stop sign and colliding with another vehicle. The collision resulted in the death of two individuals and injury to a third person. Defendant and Mr. Garcia fled the scene on foot without assisting the victims. The pair stole another truck and eluded officers.

**{3}**     Two days after the collision, law enforcement officers located and arrested Defendant. At the police station, Defendant made a statement to detectives regarding a letter of remorse that she had written to the family of the victims of the collision.

**{4}**     Defendant was indicted on the following counts: (1) two counts of first degree felony murder, or in the alternative, reckless vehicular homicide; (2) two counts of unlawful taking of a motor vehicle; (3) two counts of conspiracy to commit an unlawful taking of a motor vehicle; (4) knowingly leaving the scene of an accident resulting in great bodily harm or death; (5) great bodily injury by vehicle; and (6) aggravated fleeing of a law enforcement officer. Mr. Garcia was indicted on similar counts, and Defendant and Mr. Garcia's cases were joined.

**{5}**     During the pretrial stage of the case, Defendant filed various motions, including, in relevant part, a motion to suppress the statement that she made to detectives on the date of her arrest, and a motion for a change of venue due to the pretrial publicity surrounding the case. The district court denied both motions. Defendant also filed a

motion to dismiss the two counts of first degree felony murder brought against her. The district court granted the motion. The State appealed the district court's decision to our Supreme Court, and the case was stayed pending the appeal. The Supreme Court reversed the district court's decision, and reinstated the felony murder charges against Defendant. *See State v. Groves*, 2021-NMSC-003, ¶ 40, 478 P.3d 915. The mandate on appeal was issued on December 18, 2020, nearly three years after the filing of the State's notice of appeal. Upon remand, the district court set an August 16, 2021, trial date and the case moved forward.

{6}     Approximately a month before Defendant's trial, Mr. Garcia informed the State that he wanted to enter into a plea deal. Mr. Garcia then filed a motion to sever his case and Defendant's case, which the district court granted. The State then amended its witness list, specifically naming Mr. Garcia as a witness at Defendant's trial. Defendant filed a motion to exclude Mr. Garcia as a witness based on untimely notice, which the district court denied.

{7}     Defendant's trial began August 10, 2021, approximately four years after her arrest. Following trial, Defendant was convicted of the following seven offenses: two counts of reckless vehicular homicide, pursuant to NMSA 1978, Section 66-8-101 (2016); unlawful taking of a motor vehicle, pursuant to NMSA 1978, Section 30-16D-1(A)(1) (2009); conspiracy to commit an unlawful taking of a motor vehicle, pursuant to NMSA 1978, Section 30-28-2 (1979); knowingly leaving the scene of an accident resulting in death, pursuant to NMSA 1978, Sections 66-7-201 (1989), -203 (1978); great bodily injury by vehicle, pursuant to Section 66-8-101; and aggravated fleeing of a law enforcement officer, pursuant to NMSA 1978, Section 30-22-1.1 (2003, amended 2022). The district court sentenced Defendant to serve twenty-five and a half years in prison, assigning six-year sentences to Defendant's convictions for reckless vehicular homicide and knowingly leaving the scene of an accident resulting in great bodily harm or death. The district court also designated Defendant's convictions for reckless vehicular homicide and great bodily injury by vehicle as serious violent offenses for purposes of the EMDA. This appeal followed.

## DISCUSSION

### I.      Defendant's Unpreserved Speedy Trial Claim Does Not Support Reversal for Fundamental Error

{8}     The Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution establish an accused's right to a speedy trial. Defendant contends that her right to a speedy trial was violated by the delay of four years, six months, and twenty days that elapsed from the date of her arrest to her trial. Defendant acknowledges that her speedy trial claim was not preserved in the district court and asks this Court to exercise its discretion to review for fundamental error. *See State v. Garcia*, 2019-NMCA-056, ¶ 38, 450 P.3d 418 (explaining that this Court has the discretion to review an unpreserved speedy trial argument for fundamental error).

**{9}** We review a speedy trial claim for fundamental error only where there has been a "striking violation of the constitutional right to a speedy trial." *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Defendant argues that the length of delay in this case, the bulk of which was due to the State's pursuit of an interlocutory appeal, is alone sufficient to constitute a striking violation of her right to a speedy trial. We disagree and explain.

**{10}** To determine whether the right to a speedy trial has been violated, New Mexico courts apply the *Barker* balancing test to the particular facts and circumstances of the case. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. The *Barker* test allows us to balance the parties' interest in the prompt resolution of the case with the countervailing interests in deliberate public justice. *See Beavers v. Haubert*, 198 U.S. 77, 87 (1905) ("The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."). We, therefore, under the *Barker* test, review the conduct of both the prosecution and the defense guided by four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the actual prejudice that the defendant suffered due to the delay. *Garza*, 2009-NMSC-038, ¶ 13 (listing the factors in *Barker*, 407 U.S. at 530).

**{11}** The first *Barker* factor, length of delay, is an objective factor that serves two functions: (1) first, the length of delay "acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial'"; and (2) second, the length of delay "is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. A delay is considered presumptively prejudicial "according to the complexity of [the] case: one year for a simple case, [fifteen] months for a case of intermediate complexity, and [eighteen] months for a complex case." *Id.* Here, although the length of the delay in Defendant's case plainly exceeds the threshold for presumptive delay even assuming this case is a complex case, the length of the delay, standing alone, is first and foremost simply a triggering mechanism. *See Garza*, 2009-NMSC-038, ¶ 21 ("[W]e abolish the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is 'presumptively prejudicial.'").

**{12}** In considering the length of delay as a *Barker* factor, we agree that it weighs in favor of Defendant. We go on, however, to consider the second *Barker* factor, the reasons for the delay. Defendant's speedy trial argument focuses solely on the delay attributable to the State's interlocutory appeal. An interlocutory appeal by the State does not necessarily weigh heavily against the State in the speedy trial analysis. There are competing concerns, which require the weighing of the value of orderly appellate review on the one hand, and a speedy trial on the other. *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). This is because there are important interests in public justice and the rights of a defendant that are safeguarded through appellate review. *Id.* at 313. We, therefore, evaluate the purpose and reasonableness of the State's appeal, looking to

the strength of the State's position, the importance of the issue in the case, and the seriousness of the crime. *See State v. Flores*, 2015-NMCA-081, ¶ 28, 355 P.3d 81. The State's appeal of a "clearly tangential or frivolous" issue or an appeal brought in bad faith or for the purposes of delay would weigh heavily against the State. *See id.* ¶¶ 28-29.

**{13}**     In this case, the State appealed from an order of the district court granting Defendant's motion to dismiss the felony murder charges brought against Defendant. The Supreme Court ultimately ruled in the State's favor and reinstated the felony murder charges. *See Groves*, 2021-NMSC-003, ¶ 40. Defendant does not argue that the State engaged in any tactical delay in pursuing its appeal. The appeal was plainly meritorious and, since it addressed the validity of the highest degree of offense charged against Defendant, cannot be characterized as tangential. We, therefore, conclude that the delay challenged by Defendant weighs neutrally, and cannot be weighed against the State. *See Flores*, 2015-NMCA-081, ¶ 29.

**{14}**     Because the reasons for the delay do not weigh in Defendant's favor, Defendant must show particularized prejudice in order to prevail on his speedy trial claim. *See State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579. Defendant does not argue particularized prejudice, relying on her claim that the first two factors weigh heavily in her favor. We, therefore, find no striking violation of Defendant's right to a speedy trial justifying reversal for fundamental error.

**II.     The District Court Properly Instructed the Jury on the Elements of Aggravated Fleeing and There Is Sufficient Evidence to Support Defendant's Aggravated Fleeing Conviction**

**A.     The Jury Instruction**

**{15}**     Defendant next argues that the district court improperly instructed the jury on the elements of aggravated fleeing. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted).

**{16}**     Focusing on the "had been given" a signal to stop language of UJI 14-2217 NMRA (2009), the instruction given to the jury, Defendant contends that the instruction failed to alert the jury that Defendant must be shown to have driven recklessly "*after being given*"—the language of the statute—a visual or audible signal to stop by a uniformed law enforcement officer. Although Defendant claims she preserved her challenge to the jury instruction in the district court by submitting a proposed alternative instruction, Defendant's proposed alternative instruction does not address the timing of the signal to stop, the issue Defendant now argues on appeal. Defendant's proposed instruction states as follows: "[D]efendant drove willfully and carelessly in a manner that endangered the life of another person *while being pursued* by an appropriately marked law enforcement vehicle." Defendant's proposed instruction attempts to add to the

elements of aggravated fleeing a requirement that the police must continue to pursue a defendant who is speeding and driving recklessly. To the extent that Defendant's brief suggests that the police must engage in a high-speed pursuit to establish aggravated fleeing, this Court held in *State v. Ortega* that a high-speed pursuit by law enforcement is not an element of aggravated fleeing. 2023-NMCA-032, ¶ 20, 528 P.3d 733 ("[T]he crime of aggravated fleeing does not require that the police officer engage in a high-speed chase of a defendant."), *cert. denied* (S-1-SC-39767, Apr. 3, 2023). Because Defendant raises a different issue on appeal from the issue she raised in the district court—whether the jury was adequately instructed that the reckless driving must follow the officer's signal to stop—our review is for fundamental error. *See In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 10, 134 N.M. 516, 80 P.3d 98 (providing that an issue is preserved for appeal if the appellant "fairly invoked a ruling of the trial court on same grounds argued on appeal" (internal quotation marks and citation omitted)); *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (holding that we review a challenge to a jury instruction, which has not been preserved in the district court for fundamental error).

**{17}**     When our review is for fundamental error, we first look to whether the instruction confused or misdirected the jury. *See Benally*, 2001-NMSC-033, ¶ 12. If we find that the instruction confused or misdirected the jury, we then continue our analysis to determine whether the error so undermined the reliability of the conviction or prejudiced the defendant's rights that it would "shock the conscience to permit the conviction to stand." *Barber*, 2004-NMSC-019, ¶ 14 (internal quotation marks and citation omitted). We will reverse a conviction "if an error implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* ¶ 18 (internal quotation marks and citation omitted).

**{18}**     As noted previously, Defendant alleges that UJI 14-2217, the jury instruction that the district court provided verbatim, confused the jury because it omitted the statutory requirement that Defendant drive "willfully and carelessly . . . in a manner that endangers the life of another person *after being given* a visual or audible signal to stop." Section 30-22-1.1(A) (emphasis added). The jury instruction given by the district court provides, in pertinent part, as follows:

> 2.      [D]efendant drove willfully and carelessly in a manner that endangered the life of another person;
>
> 3.      [D]efendant had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle.

UJI 14-2217 (2009). We do not agree that the instruction given confused or misdirected the jury. The instruction's use of the phrase "had been given" adequately informed the jury that the signal to stop had to precede the Defendant's driving in a manner that endangered the life of another person. We note that "[g]enerally, an instruction that parallels the language of the statute and contains all essential elements of the crime is

sufficient." *State v. Cawley*, 1990-NMSC-088, ¶ 16, 110 N.M. 705, 799 P.2d 574. Because we conclude that no reversible error occurred, we do not address the second prong of the fundamental error analysis.

## B.      Sufficiency of the Evidence

**{19}**    Defendant's sufficiency of the evidence argument focuses solely on the lack of evidence that law enforcement continued their pursuit of Defendant after Defendant started speeding and driving recklessly. Because continued pursuit by law enforcement is not an element of aggravated fleeing, we do not consider this argument further. *See Ortega*, 2023-NMCA-032, ¶ 20 ("[T]he crime of aggravated fleeing does not require that the police officer engage in a high-speed chase of a defendant.").

## III.     The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Exclude Mr. Garcia as a Witness

**{20}**    Defendant next contends that the district court erred in denying her motion to exclude Mr. Garcia as a witness because the State added him to the witness list only a month prior to trial. We review a district court's decision to exclude or not exclude a witness for abuse of discretion. *State v. Guerra*, 2012-NMSC-014, ¶ 23, 278 P.3d 1031. Abuse of discretion occurs when the district court's decision is "against logic and not justified by reason." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. "In reviewing the district court's decision, this Court views the evidence—and all inferences to be drawn from the evidence—in the light most favorable to the district court's decision." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959.

**{21}**    This Court considers four factors in reviewing decisions regarding the late disclosure of evidence: "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non[]disclosed evidence was material; (3) whether the non[]disclosure of the evidence prejudiced the defendant; and (4) whether the [district] court cured the failure to timely disclose the evidence." *State v. Mora*, 1997-NMSC-060, ¶ 43, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. Each factor will be addressed in turn.

## A.      Whether the State Breached Its Duty to Disclose Witnesses

**{22}**    We first consider whether the State breached its duty to disclose witnesses. Rule 5-501 NMRA governs the State's duty to disclose. Under Rule 5-501(A)(5), the state shall within ten days after a defendant's arraignment disclose to the defendant "a written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial." Under LR2-308(C)(4) NMRA, the state also has "a continuing duty to disclose additional information to the defendant, including the names and contact information for newly-discovered witnesses and updated contact information for witnesses already disclosed, within seven . . . days of receipt of such information."

**{23}** Here, the district court found that the State complied with its duties to disclose under both Rule 5-501 and LR2-308. The district court states, "The State disclosed any codefendant on the State's initial witness list, and the State's subsequent witness list. Codefendant . . . Garcia's case was joined with [D]efendant's case on February 2, 2017. The State's disclosure of . . . Garcia complies with LR2-308 and [Rule] 5-501." On appeal, Defendant does not attack the district court's finding that the State complied with its duty to disclose, only that the State entered into a plea deal with Mr. Garcia too late to add him as a witness. *See* Rule 12-318(A)(4) NMRA ("[An] argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive."). We, therefore, presume that the district court's finding that the State complied with its duty to disclose witnesses promptly when a witness was identified is correct. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the district court's rulings," and it is the appellant's "burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)).

## B.  Materiality and Prejudice

**{24}** We next consider materiality and prejudice. "Whether evidence is material depends on if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *McDaniel*, 2004-NMCA-022, ¶ 11 (text only) (citation omitted).

**{25}** To determine whether a defendant has suffered prejudice, we consider "whether the defense's case would have been improved by an earlier disclosure or how the defense would have prepared differently for trial." *State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (text only) (citation omitted). The defendant must affirmatively demonstrate that she suffered harm. *See State v. Ruiz*, 2007-NMCA-014, ¶ 53, 141 N.M. 53, 150 P.3d 1003; *see also State v. Vallejos*, 2000-NMCA-075, ¶ 32, 129 N.M. 424, 9 P.3d 668 ("[The d]efendant has the burden of showing that [she] was prejudiced by the untimely disclosure.").

**{26}** Here, Defendant fails to argue materiality. She does not claim that the outcome in this case would have been different had she had more notice that Mr. Garcia would testify at her trial. Defendant, instead, attempts only to show that she suffered prejudice, arguing that she had no time to obtain impeachment witnesses or investigate Mr. Garcia's account of the incident. We are not persuaded that Defendant was prejudiced. As the district court correctly noted, Defendant and Mr. Garcia's cases had been joined for over four years, so that there was a possibility during that time that Mr. Garcia would testify. Defendant had ample time to obtain witnesses and investigate Mr. Garcia's account of the incident. Moreover, the State made Mr. Garcia available for a pretrial interview in a timely manner, defense counsel in this case extensively cross-examined Mr. Garcia and attacked his character at trial. We, therefore, conclude that Defendant has failed to make a showing that the delay in disclosure materially prejudiced her defense.

## C.    Curative Action

**{27}**    Finally, we consider the district court's curative action. Curative action "concerns the form of remedy, or sanction imposed by the district court in response to the untimely disclosure." *Ruiz*, 2007-NMCA-014, ¶ 54.

**{28}**    Here, the district court indicated that it would be "flexible as far as permitting the defense to add witnesses late or otherwise prepare for the testimony of Mr. Garcia." The district court also noted that it would consider granting Defendant a continuance if she requested one. We conclude that this is adequate under the circumstances.

**{29}**    In summary, Defendant has failed to demonstrate breach of the State's duty to disclose witnesses, materiality, prejudice, or that the district court's curative action was inadequate. We, therefore, reject her challenge to the district court's denial of her motion to exclude Mr. Garcia as a witness.

## IV.    The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a Change of Venue

**{30}**    Defendant next argues that the district court erred in denying her motion for a change of venue because of the pretrial publicity in this case. We review the district court's denial of a motion for change of venue for abuse of discretion. *State v. Vasquez*, 2010-NMCA-041, ¶ 35, 148 N.M. 202, 232 P.3d 438. The defendant bears the burden of showing that the district court abused its discretion. *State v. Barrera*, 2001-NMSC-014, ¶ 11, 130 N.M. 227, 22 P.3d 1177.

**{31}**    As a general rule, the exposure of potential jurors to pretrial publicity does not in and of itself require a change of venue. *State v. Chamberlain*, 1991-NMSC-094, ¶ 6, 112 N.M. 723, 819 P.2d 673. Further, "if the [district] court determines that a movant has not demonstrated presumed prejudice and proceeds with voir dire, we will limit our review to . . . evidence of actual prejudice." *Barrera*, 2001-NMSC-014, ¶ 16. "A finding of no actual prejudice following voir dire, if supported by substantial evidence, necessarily precludes a finding of presumed prejudice." *Id.* A district court determines that no actual prejudice exists when it impanels a jury following voir dire. *Vasquez*, 2010-NMCA-041, ¶ 37.

**{32}**    Here, the district court denied Defendant's motion for a change of venue and proceeded with voir dire, after which a jury was empaneled from that jury pool. Because the district court determined that no actual prejudice existed by impaneling a jury following voir dire, our review is limited to whether the district court abused its discretion in determining that no actual prejudice existed.

**{33}**    We conclude that substantial evidence supports the district court's determination that the impaneled jurors did not demonstrate actual prejudice. Indeed, Defendant does not argue that any impaneled jury member exhibited actual prejudice. Defendant's argument instead relies solely on the fact that there were jurors who had previously

heard about the case. However, as the State correctly points out, the district court screened the jurors who had heard about the case and ensured that they could be fair and impartial. Moreover, the jurors who confirmed that they could not be fair and impartial were struck for cause. Because Defendant fails to identify any impaneled jury member who indicated an inability to be impartial, Defendant has failed to demonstrate actual prejudice. *See id.* ¶ 38 (holding that where the defendant did not identify any individual selected to serve on the jury who indicated an inability to be impartial, the defendant failed to demonstrate actual prejudice). We, therefore affirm the district court's denial of Defendant's motion for a change of venue.

## V.      Defendant Fails to Show That the District Court Judge Was Biased Against Her

**{34}**    Defendant next contends that the district court judge was biased against her in this case. She acknowledges that she failed to preserve the judicial bias claim that she now makes on appeal and asks this Court to instead exercise its discretion to review for fundamental error. *See* Rule 12-321(B)(2) NMRA ("This rule does not preclude . . . the appellate court . . . from considering . . . issues involving . . . fundamental error[] or . . . fundamental rights of a party."). The first step in reviewing for fundamental error is to determine whether an error occurred. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 8, 141 N.M. 801, 161 P.3d 846. If an error has occurred, we then consider whether the error was fundamental. *Id.*

**{35}**    "As a general rule, a fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case." *State v. Fernandez*, 1994-NMCA-056, ¶ 6, 117 N.M. 673, 875 P.2d 1104 (text only) (citation omitted). Accordingly, to determine whether an error occurred, we consider "whether the conduct of the judge deprived the defendant of a fair trial." *State v. Muise*, 1985-NMCA-090, ¶ 34, 103 N.M. 382, 707 P.2d 1192. A claim of judicial bias must be "of a personal nature." *State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312. "[I]t is firmly established that [a claim] of judicial bias cannot be predicated upon unfavorable rulings, nor from the imposition of maximum allowable prison sentences." *State v. Williams*, 1986-NMCA-122, ¶ 19, 105 N.M. 214, 730 P.2d 1196 (citation omitted).

**{36}**    Here, Defendant argues that the district court judge was biased against her because he did not allow her to introduce the letter that she wrote to the family of the victims in this case as evidence of her remorse. "The admission or exclusion of evidence is within the discretion of the district court." *Fernandez*, 1994-NMCA-056, ¶ 21. Further, a claim of judicial bias cannot be based on an unfavorable evidentiary ruling. *Id.*

**{37}**    Next, Defendant contends that the district court judge was biased against her because of the rulings entered against the defense in this case, including the district court's denial of the motion to suppress the statement that she made to the police on the date of her arrest, and the harsh sentence that she received. As mentioned previously, claims "of judicial bias cannot be predicated upon unfavorable rulings, nor

from the imposition of maximum allowable prison sentences." *Williams*, 1986-NMCA-122, ¶ 19 (citation omitted).

**{38}** Finally, Defendant claims that the district court judge was biased against her because he permitted the case to "languish" while she remained in custody. Defendant, however, fails to explain what she means, or where in the record this claim is supported.1 We, therefore, decline to consider this claim further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court does not review unclear or undeveloped arguments); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Because we conclude that no reversible error occurred, we do not address the second prong of the fundamental error analysis.

## VI.    Defendant's Argument That the District Court Erred in Denying Her Motion to Suppress Is Moot

**{39}** Defendant next challenges the district court's order denying her motion to suppress the statement that she made to the police on the date of her arrest, claiming that the statement was made involuntarily. Before addressing the merits of Defendant's claim, we first consider the State's argument that Defendant's claim is moot.

**{40}** Mootness is a limit on this Court's jurisdiction. *Howell v. Heim*, 1994-NMSC-103, ¶ 7, 118 N.M. 500, 882 P.2d 541. As a result, we review whether an issue before us is moot as a threshold matter, and do so de novo. *See State v. Favela*, 2013-NMCA-102, ¶ 6, 311 P.3d 1213. Generally, an issue is moot "when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief." *State v. Sergio B.*, 2002-NMCA-070, ¶ 9, 132 N.M. 375, 48 P.3d 764.

**{41}** In this case, Defendant contends that the district court erred in denying her motion to suppress the statement that she made to the police on the date of her arrest. Although the district court denied Defendant's motion, Defendant's statement was not admitted at trial, nor was any evidence related to that statement.2 Accordingly, any ruling that the district court erred in denying her motion to suppress would not grant Defendant any relief. We, therefore, hold that Defendant's argument is moot and decline to consider it. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (noting that this Court will not decide moot cases).

## VII.    Defendant's Sentencing Argument Is Based on Inapplicable Law

**{42}** Defendant next argues that the district court erred in assigning six-year sentences to each of her convictions for reckless vehicular homicide and knowingly

---

1To the extent that Defendant is restating her speedy trial violation claim, we held above that there is no striking violation of Defendant's speedy trial right justifying review for fundamental error.
2Defendant introduced a video of her police interrogation at trial to show her remorse about the incident. The video has no sound.

leaving the scene of an accident resulting in great bodily harm or death. Defendant's argument is based solely on a recent amendment to NMSA 1978, Section 31-18-15(A) (2016, amended 2022), which sets out the basic sentences of imprisonment for noncapital felonies.

**{43}**    The Section 31-18-15(A) amendment that Defendant uses to support her argument went into effect on May 18, 2022. *See* 2022 N.M. Laws, 2nd Sess., ch. 56, § 29. Defendant was sentenced on November 24, 2021, approximately six months before the amendment became effective. The amendment, therefore, is not applicable in this case. *See State v. Padilla*, 1968-NMCA-004, ¶ 5, 78 N.M. 702, 437 P.2d 163 ("[I]t is presumed that statutes . . . operate prospectively only." (internal quotation marks and citation omitted)). We, therefore, do not consider this argument further.

### VIII.    The District Court Did Not Abuse Its Discretion in Designating Defendant's Convictions for Reckless Vehicular Homicide and Great Bodily Injury by Vehicle as Serious Violent Offenses for Purposes of the EMDA

**{44}**    Defendant finally challenges the district court's designation of her convictions for reckless vehicular homicide and great bodily injury by vehicle as serious violent offenses for purposes of the EMDA. The EMDA allows a prisoner to earn meritorious deductions from a sentence for active participation in recommended programs approved by the warden of the prison. NMSA 1978, § 33-2-34(A) (2015). Under the EMDA, a prisoner may earn up to thirty days per month of time served for a nonviolent offense, and up to four days per month of time served for a serious violent offense. Section 33-2-34(A)(1), (2).

**{45}**    The EMDA classifies certain offenses as per se serious violent offenses. Section 33-2-34(L)(4). The EMDA also provides the district court with the discretion to designate other offenses as serious violent offenses based on "the nature of the offense and the resulting harm." Section 33-2-34(L)(o). Such offenses include third degree homicide by vehicle and great bodily injury by vehicle. *Id.* To designate third degree homicide by vehicle and great bodily injury by vehicle as serious violent offenses, the district court "must determine that the crime was 'committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm.'" *State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 (quoting *State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747). Here, Defendant challenges the district court's discretionary decision to designate her convictions for reckless vehicular homicide and great bodily injury by a vehicle as serious violent offenses.

**{46}**    This Court reviews a district court's designation of an offense as a serious violent offense for abuse of discretion. *See State v. Scurry*, 2007-NMCA-064, ¶ 4, 141 N.M. 591, 158 P.3d 1034. "A [district] court . . . abuse[s] its discretion when its decision is not supported by substantial evidence," *State v. Montoya*, 2005-NMCA-078, ¶ 8, 137 N.M. 713, 114 P.3d 393, or when it acts contrary to the law. *Scurry,* 2007-NMCA-064, ¶ 4.

**{47}** Here, while Defendant challenges the district court's discretionary decision to designate her convictions for reckless vehicular homicide and great bodily injury by a vehicle as serious violent offenses, Defendant fails to provide any argument to support her challenge. Defendant, instead, merely characterizes the court's designation as unfair. We, therefore, do not consider this argument further. *See Fuentes*, 2010-NMCA-027, ¶ 29 (explaining that this Court does not review undeveloped arguments).

**CONCLUSION**

**{48}** We affirm the district court's entry of judgment and sentence.

**{49}** **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**

**retired, Sitting by designation**